## Q. W. LOVERIN-BROWNE CO. *vs.* BANK OF BUFFALO.

Opinion filed May 27th, 1898.

**Agency Not Proved by Declarations of Agent.**

> An agency cannot be established by proof of any statements or acts of the alleged agent, unless the same were brought to the knowledge of the alleged principal, and not repudiated by him.

**Incompetent Proof of Agency.**

> The testimony by which defendant sought to establish agency in this case examined, and *held* to present no competent evidence of agency.

**Amendment of Pleadings—Discretionary.**

> The allowance or rejection of amendments to pleadings is a matter resting largely in the discretion of the trial court, and its action should not be reviewed by an appellate court except in clear cases of abuse of discretion.

**Excessive Verdict—Excess Remitted.**

> Where by inadvertence a verdict has been directed for a few dollars more than was proper, the appellant cannot raise the point for the first time in this court. But, where the respondent voluntarily offers to remit the excess, such remittance will be ordered, and the judgment modified and affirmed, at the cost of the appellant.

Appeal from District Court, Cass County; *Pollock,* J.

Action by the Q. W. Loverin-Browne Company against the Bank of Buffalo. From a judgment entered on a verdict directed for plaintiff, defendant appeals.

Affirmed.

*J. W. Tilly* and *S. G. More,* for appellant.

*Morrill & Engerud,* for respondent.

BARTHOLOMEW, J. Defendant bank appeals to this court from a directed verdict against it. The plaintiff corporation is a wholesale dealer in groceries at Chicago. On February 20, 1896, defendant received from plaintiff a telegram which read: "We guaranty payment of fifty dollars to C. E. Birdsall." The next communication between the parties was a letter from plaintiff to the defendant dated April 6, 1896, which reads as follows: "At the request of Mr. Birsdall, who says he has arranged with you,

we hand you herewith a bill for collection: C. E. Birdsall, Enderlin, No. Dak., $969.79, net. Mr. Birdsall will settle with you for your charges for collection. The delivery is at Enderlin, Apr. 10th; and we suppose Mr. B. has explained that the goods are sold to different farmers around Enderlin, who will come in and get goods and pay at depot on above date. You can send a man over there, and have him collect from Birdsall, who will deliver goods to customers and collect for them." Four days later plaintiff sent another letter to defendant, which reads: "We herewith inclose a bill for collection: C. E. Birdsall, Davenport, N. Dak., $844.18, net. This delivery is at Davenport, Apr. 15th. Mr. Birdsall will settle for collecting the same as on previous collection to Enderlin." These collections were promptly made and remitted, and their receipt in full is acknowledged by plaintiff on April 21st. Other similar collections followed, including one for goods to be delivered at Ada, Minn. In remitting for that collection the defendant wrote plaintiff as follows: "Inclosed, we send you N. Y. draft for $194.43. We furnished your Mr. Birdsall team, harness, buggy, and money to the amount of $330. He told us that his livery bill was so high that his expenses run up so that he was unable to make anything, and that you would be perfectly satisfied with the deal, and I think myself that it will be a good thing for him; for in harvest time, through this country, it is almost impossible to get a livery rig at any reasonable figure. Our collector received from the Ada collection $524.43; our bill against Mr. Birdsall, $330; draft to balance, $194.43. Trusting this will be satisfactory to you, as we understand from Mr. Birdsall it will, and also from telegrams we have received from you, we are, very truly, yours." On same date defendant wrote to Mr. Birdsall as follows: "I have today sent Loverin & Browne Co., a draft for $194.43. When Mr. Casey returned, and told me that you had got rid of the team I sold you, I thought it better to square up the account, as no doubt you would wish it yourself, and rather deal directly with the house than to have the matter stand open between the three of us. I

charged you $50 for the Lee mare; $200 for the rig that you took away; $24 for Casey; $20 cash; $36 in note,—making in all $330. I inclose you copy of letter sent to the house." The plaintiff promptly responded, denying all agency on the part of Birdsall, and all liability for any property purchased by him or accounts made by him in the capacity of agent, and demanded a remittance of the balance collected. Defendant refused to account for such balance, except as by its letter of June 5th, and plaintiff brought this action in November following to recover the balance in defendant's hands. In its answer, defendant alleges, on information and belief, that said Birdsall was the agent of plaintiff engaged in soliciting orders and selling goods for plaintiff, and was generally authorized by plaintiff to attend to its business in that line, and do all things for and in plaintiff's name in furtherance of that agency, and then declares that in May, 1896, at the solicitation and request of Birdsall, defendant sold and delivered to him a team, harness and buggy, and advanced him certain moneys, for and on behalf of plaintiff, with which to prosecute and attend to plaintiff's said business, in all of the value of $330; that said team was purchased by Birdsall on account of plaintiff, and as its agent, and procured said advances for plaintiff as its agent duly authorized, "and then and there agreed that plaintiff should and would pay defendant therefor; and the said Birdsall then and there further agreed to pay defendant said sum of $330 therefor out of the first moneys realized and received by him from the sale of plaintiff's said goods." On the trial plaintiff's general manager and plaintiff's bookkeeper testified, in substance, that Birdsall never was the agent for plaintiff, or authorized to act for it in any way; that plaintiff sent him a price list at which it would furnish goods to him; that he sold the goods at such prices as he saw proper; that when he had taken orders for goods he would send them to plaintiff, and plaintiff would fill the orders, and send the goods to such point as he might direct, when he would deliver the same to his customers, being responsible to plaintiff only for the price-list price thereof. Defendant sought

to prove certain statements and acts of Mr. Birdsall as showing agency. This evidence was excluded on objection, and as it was not shown that such statements or acts were ever brought home to, or in any manner adopted by, plaintiff, the ruling was clearly right, on plain principles. Likewise the fact, if it were a fact, that plaintiff paid a certain livery bill incurred by Birdsall, was incompetent to establish agency. Defendant relies upon the telegram of February 20th, and the letters of plaintiff of April 6th and 10th, as sufficient to warrant it in regarding Birdsall as plaintiff's agent. By what process of reasoning it could have been supposed that such documents recognized him as an agent authorized to purchase a team, buggy, and harness, we cannot understand. As a matter of fact, they did not recognize him as an agent for any purpose. By the telegram the plaintiff made itself guarantor for Birdsall. That presupposed a primary liability on Birdsall's part, and notified the bank that it must deal with Birdsall as a principal, and with plaintiff as a guarantor, so far as the matter stated in the telegram was concerned. The statement in the letters specially relied upon is the declaration that Birdsall would settle with defendant for its collection charges. It is claimed that this was a notification to defendant that plaintiff had arranged with Birdsall to pay such charges for it. On the contrary, it was a notification to defendant that it must look to Birdsall alone for the payment of such charges, and that plaintiff would not be liable therefor. The collections sent to defendant were stated at so many dollars, "net." Plaintiff did not concern itself about the amount of collection fees. It demanded so much money, net. That this was fully understood and acted upon by the defendant is shown by the fact that the exact amount of the Enderlin and Davenport collections was collected and remitted.

Near the close of the trial the defendant made an offer of testimony, the main features of which were as follows: That during February and March, 1896, Birdsall was hiring livery teams from one Buckley with which to prosecute the business of

selling groceries for plaintiff, and that plaintiff authorized Buckley to deal with Birdsall, and guarantied the bills, and further that, after the Ada delivery of goods, Birdsall telegraphed plaintiff for money with which to pay his other expenses and prosecute his business, and that plaintiff telegraphed $50 to Birdsall for that purpose; that during all the time that Birdsall was dealing with defendant he claimed to be the general agent for plaintiff, and that he had a right to purchase the team; that plaintiff was behind him, and would make good any transaction that he entered into on that behalf; that, at the time defendant sold said team to Birdsall for his principal, he assured defendant that plaintiff would pay for the property, and that, if they did not do so, he would, and that defendant should receive its money out of what money he collected at Ada; that after Birdsall collected the money at Ada he paid defendant $330 on the property and money advanced, and gave defendant $194.43 to be sent to plaintiff; that all the goods shipped to the various points were shipped direct to Birdsall; and that he received and receipted for the same, and delivered the goods and collected the money therefor, and delivered such part thereof as he saw fit to defendant, to be forwarded to plaintiff. This offer was objected to, so far as it is sought to establish agency, because incompetent, and so far as it sought to show payment to defendant by Birdsall, because not admissible under the answer. These objections were sustained, and defendant then asked leave to amend its answer to correspond with the proof offered. This was refused, and defendant earnestly urges in this court that such refusal was reversible error. We think not. The allowance of amendments, particularly at that stage of the case, and raising practically a new issue, rests largely in the discretion of the trial court,—a discretion which an appellate court should never control, except in clear cases of abuse. 1 Enc. Pl. & Prac. 524, *et seq.* It would be doubtful practice in any case to allow an amendment to correspond with proofs offered and rejected. In this case no amendment was presented, and the offered proof was squarely

contradictory in itself. A portion of it sought to establish Birdsall's agency, and hold plaintiff on its contract by such agent. A portion of it sought to establish that Birdsall paid defendant $330 out of the Ada collection from his own money, in payment of his own debt contracted in his own behalf, and that he only paid defendant $194.43 for plaintiff. Counsel urges that inasmuch as plaintiff's testimony tends to show that no agency existed, and that Birdsall was acting for himself, defendant had a right to plead and prove that the Ada collection was turned over to and received by it, not as the money of plaintiff, but in payment of Birdsall's debt. Undoubtedly that might have been pleaded at the proper time if such were the fact. But it came too late, and there was no excuse for the delay. At once, when the disposition made of the Ada collection was reported, plaintiff repudiated it, and denied Birdsall's agency; and in a somewhat extended correspondence that followed, all of which is in evidence, Birdall's relations to plaintiff were clearly explained. The case had been at issue for more than a year on the old pleadings. All of plaintiff's testimony had been taken by deposition, and had been on file in the case for more than six months. Birdsall, the only party could contradict the statement, was not present. There was nothing in the issues as they had stood for more than a year to require his presence. Moreover, the letter written by the bank to Birdsall on June 5, 1896, and hereinbefore set out, is utterly inconsistent with the theory that Birdsall paid defendant any money from the Ada collection on his own account. Further in its letter to plaintiff of same date the bank expressly states, "Our collector received from the Ada collection $524.43," which plaintiff could only understand to mean that the bank had received on the collection sent it for the goods shipped to Ada the sum named. There was no abuse of discretion in refusing to allow the amendment.

The court directed a verdict for $337.15, with interest at 7 per cent. from June 5, 1896, amounting to $372.50. The direction should have been for a verdict of $330, with interest at 7 per cent.

from June 5, 1896, amounting to $364.85. Respondent concedes this to be true, and offers to remit the sum of $7.65. The general rule is that where a remittitur is entered on appeal the judgment will be affirmed, but at the costs of the party entering the remittitur. Elliott, App. Proc. § 573. But it is there stated that the rule has its exceptions, and we think this should be one. So far as the record discloses, this discrepancy was never called to the attention of the trial court, or of respondent's counsel. True, appellant excepted to the ruling of the court in directing a verdict, but the exception was not based upon the amount of the verdict. It was simply upon the general ground that under the evidence the defendant has a right to go to the jury. Certainly, in the absence of any showing of any effort to correct the error below, we cannot assume that appellant was forced to come to this court to correct such error. Indeed, upon authority, he could not, as a matter of right, have it corrected in this court. In *Morris* v. *Peck*, 73 Wis. 482, 41 N. W. Rep. 623, and *Mahon* v. *Kennedy*, 87 Wis. 50, 57 N. W. Rep. 1108, it was ruled that in case of an inadvertent mistake of this kind the point could not be raised for the first time in the appellate court. But, as respondent voluntarily offers to remit, a formal remittitur will be filed in the District Court for the sum of $7.65, as of the date of the verdict in the case. We must not be understood as holding that this court has the power, in any case submitted to a jury for a general verdict, to order absolutely that the respondent remit any portion thereof, where either party objects to such remittitur. That question is not involved in our ruling. With the modification herein directed, the judgment of the District Court is affirmed, with costs of this appeal to plaintiff. All concur.